<u>FILED UNDER SEAL</u>

**BATHAEE DUNNE LLP**
Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel.: (213) 462-2772

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Christopher R. Pitoun (SBN 290235)
christopherp@hbsslaw.com
Abigail D. Pershing (SBN 346467)
abigailp@hbsslaw.com
Emilee N. Sisco (*pro hac vice*)
emilees@hbsslaw.com
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Tel.: (213) 330-7150

*Attorneys for Plaintiffs and the Proposed Classes*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TARAN PIETOSI, et al., <br><br> Plaintiffs, <br><br> v. <br><br> HP, INC., <br><br> Defendant. | Case No. 3:22-cv-04273-VC <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT** <br><br> Hon. Vince Chhabria <br><br> Hearing Date: May 15, 2025 <br><br> Time: 10:00 a.m. |

**FILED UNDER SEAL**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 4

I.     PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT THAT
THEY PURCHASED DEFECTIVE HP COMPUTERS ................................................ 4

     A.     Plaintiffs' computers are defective ........................................................ 4

     B.     HP's evidentiary arguments are wrong .............................................. 12

           1.     HP's argument that AMD-produced evidence must be "excluded
entirely" is wrong and has already been rejected by the Court ................. 13

           2.     HP's authentication argument is legally incorrect and does not justify
exclusion of any evidence ........................................................................ 13

           3.     HP's hearsay argument is similarly out of date and unfounded .............. 16

II.     PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT THAT HP
KNEW OF THE DESIGN DEFECT PRIOR TO PLAINTIFFS' PURCHASES ............ 17

CONCLUSION .................................................................................................................. 18

<u>**FILED UNDER SEAL**</u>

## TABLE OF AUTHORITIES

### Cases

*Am. Fed'n of Musicians of U.S. & Canada v. Paramount Pictures Corp.*,
903 F.3d 968 (9th Cir. 2018) ................................................................................. 16

*Assoc. Indus. Ins. Co. v. Ategrity Specialty Ins. Co.*,
2023 WL 3874021 (N.D. Cal. Jun. 6, 2023) ................................................. 14, 15, 16

*Beyene v. Coleman Sec. Servs., Inc.*,
854 F.2d 1179 (9th Cir. 1988) .............................................................................. 13

*Canada v. Blain's Helicopters, Inc.*,
831 F.2d 920 (9th Cir. 1987) ................................................................................ 13

*Cottrell v. I.C. Sys., Inc.*,
2022 WL 17582374 (W.D. Wash. Dec. 12, 2022) ................................................ 14

*Cristobal v. Siegel*,
26 F.3d 1488 (9th Cir. 1994) ................................................................................ 13

*Dinkins v. Schinzel*,
362 F. Supp.3d 916 (D. Nev. 2019) ...................................................................... 14

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
896 F.2d 1542 (9th Cir. 1989) .............................................................................. 13

*Hamilton v. Keystone Tankship Corp.*,
539 F.2d 684 (9th Cir. 1976) ................................................................................ 13

*Harlow v. Chaffey Cmty. Coll. Dist.*,
2022 WL 4077103 (9th Cir. Sep. 6, 2022) ...................................................... 14, 16

*Hodges v. Hertz Corp.*,
351 F. Supp. 3d 1227 (N.D. Cal. 2018) ................................................................ 17

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.*,
81 F.3d 881 (9th Cir. 1996) .................................................................................. 16

*Oglesby v. Coca-Cola Bottling Co. of Chi./Wis.*,
620 F. Supp. 1336 (N.D. Ill. 1985) ....................................................................... 16

*Olympic Ins. Co. v. H.D. Harrison, Inc.*,
418 F.2d 669 (5th Cir. 1969) ................................................................................ 16

*Orr v. Bank of America NT & SA*,
285 F.3d 764 (9th Cir. 2002) .................................................................. 13, 14, 16

**FILED UNDER SEAL**

*Romero v. Nev. Dep't of Corr.*,
  673 F. App'x 641 (9th Cir. 2016) ...................................................................... 14, 16

*Sandoval v. Cnty. of San Diego*,
  985 F.3d 657 (9th Cir. 2021) ........................................................................... 16, 17

*Wilson v. City of Berkeley*,
  995 F.2d 235 (9th Cir. 1993) ................................................................................ 13

## Rules

Fed. R. Civ. P. 56 .................................................................................................. *passim*

## Other Authorities

31 Wright & Miller, *Fed. Prac. & Proc. Evid.* § 7105 (2d ed. Apr. 2025 update)................ 15, 16

FILED UNDER SEAL

## INTRODUCTION

AMD makes system-on-chips ("CPU-SOCs") that power millions of HP computers. These complex CPU-SOCs contain a variety of components, but have at their heart two main processing units—a primary, multicore processing component called the "x86," and a smaller, hardened security processor called the PSP. The PSP is the root of security for both the CPU-PSP and the computer system built around it.

When AMD first placed the PSP into its consumer CPU-SOCs, it made a series of design choices.

Plaintiffs' Reply in Support of Cross-Motion for Summary Judgment – No. 3:22-cv-04273-VC

**FILED UNDER SEAL**



HP knew these computers had a design defect that caused stuttering and that created a catastrophic security vulnerability—and HP knew that AMD offered a firmware patch that could help mitigate both—but HP didn't implement

**FILED UNDER SEAL**

it. Instead, HP kept selling computers that were defective in multiple respects—at least two of which HP definitively knew about.

The *Pietosi* plaintiffs bought HP computers built around defective AMD CPU-SOCs between December 2019 and August 2021.



In early 2022, the fTPM stuttering ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉ became international news as Microsoft forced the use of AMD's fTPMs with the new version of Windows. HP declined to offer ROM Armor for pre-2022 computer models, even those it kept selling. HP was sued for its conduct. It still refuses to offer ROM Armor to its injured customers like the Plaintiffs here.

All of the above is established through evidence cited in Plaintiffs' March 14 cross-motion for partial summary judgment. *See* Dkt. 324 ("Pl. Mot.") at 1-24 (Statement of Material Facts). Plaintiffs seek summary judgment that they purchased HP computers that included a design defect (the ▉▉▉▉▉▉▉▉ design defect described in Plaintiffs' motion and explained further here), and that HP knew about this design defect when Plaintiffs bought their HP computers.

HP's recent reply brief does nothing to material dispute the evidence recited above. Instead, it focuses almost exclusively on legally flawed and factually inapposite evidentiary complaints that have either already been rejected by the Court or are directed to case law superseded by revisions to Rule 56 in 2010.

Nothing in HP's most recent brief defeats Plaintiffs' cross-motions for partial summary judgment. They should be granted.

FILED UNDER SEAL

**ARGUMENT**

### I.   PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT THAT THEY PURCHASED DEFECTIVE HP COMPUTERS

The genesis of this case is a simple fact: Plaintiffs bought AMD-based HP computers that contained a design defect and were defective at the time they were purchased. As Plaintiffs explained in their cross-motion for partial summary judgment, this baseline fact is not materially disputed. Unrebutted documentary evidence, testimony, and expert evidence from AMD itself shows that the HP computers purchased by the *Pietosi* plaintiffs were defective at the time they bought them. *See generally* Pl. Mot. at 1-24 (Statement of Material Facts).

#### A.   Plaintiffs' computers are defective

For example, AMD's own documents and expert disclosures don't just show, but actually acknowledge, that the CPU-SOCs at the heart of AMD-based HP computers contained a design defect centered upon ███████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████



Ex. 26   at 6 (AMD document)

---

[1] All regular-numbered exhibits refer to the exhibits to Declaration of Brian J. Dunne (Exs. 1-79) or the Supplemental Declaration of Brian J. Dunne (Exs. 80 and up).

**FILED UNDER SEAL**

Put more simply (as explained in detail by Plaintiffs' expert Steve Novak, a former AMD system-on-chip designer), in the early 2010s AMD put a security chip called the PSP in its Ryzen and Athlon CPU-SOCs. Ex. N-1 (Novak Report) ¶¶ 47, 55. This PSP required non-volatile storage to operate, but

*Ex. 26 at 6, with illustrations added for demonstration purposes*

**FILED UNDER SEAL**



*Ex. 26 at 6, with illustrations added for demonstration purposes*

Invoking an SMI places the entire computer system into a halted state called "SMM" (this can be seen in the "SMM handler" in the diagram above), during which no processing can occur until the SMI is serviced and completed. Exs. N-1 (Novak Report) ¶¶ 75-81; 82 ▮▮▮▮▮▮▮. That is, AMD designed its CPU-SOCs such that the PSP within them would halt processing systemwide every time it accessed SPI-ROM storage, *for the duration of the storage access*. Exs. N-1 (Novak Report) ¶¶ 76-84; 82 (Gupta) 42:10-45:22. This much is not materially disputed.

Also materially undisputed—because these facts come from AMD's own documents and conclusions, not Plaintiffs'—were the problematic results of AMD's PSP design. ▮▮▮▮▮▮

---

[2] *See* Ex. 21 (PX 92) at AMD01047733 ▮▮▮▮▮▮▮▮▮▮

**FILED UNDER SEAL**



Here too, believing Plaintiffs and their experts is not necessary to establish the serious, concrete security problems innate in AMD's PSP storage access design—AMD and HP's own documents and testimony definitively show



**FILED UNDER SEAL**



*Ex. 26 at 7, with illustrations added for demonstration purposes*



---

[3] Despite repeatedly telling the Court that Plaintiffs misunderstand, misrepresent, and even mislead about the technical evidence in this case, AMD's recent on-the-docket corrections reveal that Plaintiffs were ***right***—and AMD ***wrong***—in describing the security issues that motivated a reengineering of AMD's flawed storage access design. *See* Ex. 87 (*Day* Dkt. 342-1)

**FILED UNDER SEAL**



And finally, it is materially undisputed that this same AMD design choice—████████ ████████████████████████████████████—caused stuttering in AMD-based

computers. The technical reason for this is extremely straightforward, and is also not disputed:

███████████ This is unsurprising, as Plaintiffs have taken great pains throughout this litigation to describe the technology and evidence in the *Day* and *Pietosi* cases accurately and objectively.

**FILED UNDER SEAL**



The design of AMD's PSP storage access mechanism—███████████████████ ██████████████████████████—undisputedly would cause stuttering if such a storage access occurred during operation of a computer built around an AMD CPU-SOC with the original PSP storage access design. ███████████████████ ████████████████████████████████████████████ ████████████████████████████████████ Although AMD disputes how often the design flaw actually led to stuttering in normal operation, there is no actual dispute in this case that AMD designed its PSP storage access mechanism in a way that would be expected to—and did, in both testing and in the wild—lead to observable, problematic system stuttering.

In short, the evidence is materially undisputed that AMD CPU-SOCs sold with AMD's original PSP storage access design, and HP computers built around such AMD CPU-SOCs, contain a design defect, which has been document to cause instability, documented to cause security problems, and documented to cause performance problems (notably, stuttering). Further, the evidence is materially undisputed that each *Pietosi* plaintiff bought an HP computer that was built around a defective AMD CPU-SOC. Receipts, sworn discovery responses and deposition

testimony establish without dispute that the *Pietosi* plaintiffs bought the following HP computers, which contained the below-identified defective AMD CPU-SOCs:

- Laura Lake purchased an HP Notebook, model number 15- db1021cy, with an AMD Ryzen 7 processor for her minor son to use. Ex. 79 (Lake Resp. Nos. 2 & 7)

- Taran Pietosi purchased an HP All-in-One computer, model number 22- df0023-w, with an AMD Ryzen 3 processor. Ex. 78 (Pietosi Resp. Nos. 2 & 7); Ex. 61 (Pietosi) 38:10-11.

- Aniette Bruzos de Logorz purchased an HP All-in-One 24-dd0010 computer with an AMD Athlon Silver 3050U processor. Ex. 76 (Bruzos de Logorz Resp. Nos. 2 & 7); Ex. 75 (Bruzos de Logorz) 72:9-11.[4]

HP has not disputed, and cannot dispute, that the *Pietosi* plaintiffs made the above purchases, or that the AMD hardware within these computers is what Plaintiffs say it is.

More, it is materially undisputed that HP has refused to provide any of the *Pietosi* plaintiffs—and thousands if not millions of other people who bought HP computers with defective AMD CPU-SOCs prior to mid-2022 (and many purchasers afterward)—with the AMD ROM Armor patch ███████████████████████████████████████████████ ███████████████████████████████. *See* Exs. 12-14; Ex. N-1 (Novak Report) ¶¶ 131-33, 154; Ex. 47 ███████████.

**B.    HP's evidentiary arguments are wrong**

In response to the unambiguous—and unrebutted—evidence that Ms. Pietosi, Ms. Lake, and Ms. Brugos de Logorz bought HP computers that contained a design defect, HP raises a series of arguments attacking the admissibility of Plaintiffs' cited evidence. HP's evidentiary arguments are simply wrong.

---

[4] *See also* Bruzos de Logorz Decl. ¶¶ 4-8 (attesting that Ms. Bruzos de Logorz (1) experienced stuttering on her HP computer with an AMD CPU and (2) would not have purchased it at the price she paid if she had seen information prior to purchase reflecting that the HP computer with an AMD CPU included a design defect that rendered the computer subject to stuttering in performance of everyday computing tasks and rendered the CPU and computer particularly vulnerable to firmware attacks).

**FILED UNDER SEAL**

### 1.   HP's argument that AMD-produced evidence must be "excluded entirely" is wrong and has already been rejected by the Court

HP first argues that AMD-produced evidence cited by Plaintiffs in support of their summary judgment motion should be "exclud[ed] . . . entirely" because it was allegedly "not produce[d] or disclose[d] . . . in the *Pietosi* matter during discovery." HP Reply at 2. This argument is identical to a lengthy motion previously filed by HP seeking to exclude this evidence, which the Court denied. *See* Dkt. 202 (HP's Motion to Strike); Dkt. 225 (minute entry denying motion). Plaintiffs wrote an entire brief explaining why HP was wrong on this issue, *see* Dkt. 211; nothing material has changed.

### 2.   HP's authentication argument is legally incorrect and does not justify exclusion of any evidence

HP next argues that AMD-produced documents from the *Day* case cannot be considered by the Court "because they were not properly authenticated." HP Reply at 3. Setting aside that there is no actual dispute about the authenticity of documents produced by HP's close business partner AMD in the related *Day* case, pursuant to an ESI protocol and protective order shared between the *Day* and *Pietosi* cases, HP is simply wrong on the law it presents to the Court regarding authentication at summary judgment.

Specifically, HP cites six Ninth Circuit cases from 1976 to 2002—the most recent of which is *Orr v. Bank of America NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002)[5]—for the proposition that "[t]he Ninth Circuit has repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment." HP Reply at 3. This statement is literally true: the Ninth Circuit *has* repeatedly held as much. But only several decades ago, because in 2010 Rule 56 was changed, and the "repeated[] h[oldings]" cited by HP were superseded. That is, "[a]s the Ninth Circuit has noted, 'Rule 56 was amended in 2010 to eliminate the unequivocal requirement that evidence submitted at summary judgment must be authenticated.'" *Assoc. Indus. Ins. Co. v. Ategrity*

---

[5] Besides *Orr*, the cases that HP cites for its authentication argument are *Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550-51 (9th Cir. 1989); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988); *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987); *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686 (9th Cir. 1976); and *Wilson v. City of Berkeley*, 995 F.2d 235 (9th Cir. 1993).

*Specialty Ins. Co.*, 2023 WL 3874021, at *3 (N.D. Cal. Jun. 6, 2023) (quoting *Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016)).

As a result, district courts and the Ninth Circuit itself consistently cabin *Orr* and its forebears, as these pre-2010 cases are simply no longer consistent with the amended mandate of Rule 56. *See, e.g.*, *Cottrell v. I.C. Sys., Inc.*, 2022 WL 17582374, at *1 (W.D. Wash. Dec. 12, 2022) ("Plaintiff requests that the Court strike [certain exhibits]. Plaintiff argues that these exhibits lack authentication and contain hearsay. Plaintiff bases his request on [*Orr*]. But a 2010 amendment changed Rule 56 and superseded the *Orr* holding on which Plaintiff relies."); *Dinkins v. Schinzel*, 362 F. Supp.3d 916, 922-23 (D. Nev. 2019) ("Both parties make much of the authentication and admissibility of exhibits. The parties seem to rely on—without citing to—the standard set forth in *Orr v. Bank of America*, which requires evidence to be authenticated and admissible in its present form for it to be considered at the summary-judgment stage. However, the 2010 amendments to [Rule 56] eliminated this unequivocal requirement and mandate only that the *substance* of the proffered evidence would be admissible at trial." (italics in original but otherwise cleaned up)); *Harlow v. Chaffey Cmty. Coll. Dist.*, 2022 WL 4077103, at *1 (9th Cir. Sep. 6, 2022).

As the Ninth Circuit explained in *Harlow*:

> The district court declined to consider Harlow's evidence because in *Orr v. Bank of America, NT & SA*, we indicated that courts do not consider unauthenticated evidence when resolving a motion for summary judgment. 285 F.3d 764, 774 (9th Cir. 2002). But in 2010, Federal Rule of Civil Procedure 56 changed. Courts must now consider unauthenticated evidence at summary judgment if the evidence can "be presented in a *form* that would be admissible" at trial. Fed. R. Civ. P. 56(c)(2) (emphasis added); *see also id.*, advisory comm. note to 2010 Amendments (proponent of evidence can either "show that the material is admissible as presented or explain the admissible form that is anticipated" at trial).

> The district court abused its discretion in declining to consider Harlow's evidence. . . . The district court's reliance on *Orr*'s interpretation of Rule 56 before the 2010 amendments was an error because the legal standard has since changed.

2022 WL 4077103, at *1. HP's authentication argument, and its reliance on *Orr* and its progenitors in support, is simply legally wrong.

**FILED UNDER SEAL**

With this said, it is not that case that *no* showing must be made for the Court to consider documents and statements presented as summary judgment evidence. But after 2010, the appropriate inquiry is whether "the evidence ***can*** be presented in a form that would be admissible at trial." *Assoc. Indus. Ins. Co.*, 2023 WL 3874021 at *3 (cleaned up and emphasis added). As the advisory committee notes to the 2010 amendments to Rule 56 explain, "[t]he burden is on the proponent to show that . . . material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2) (advisory committee's note to 2010 amendment). Here, all of Plaintiffs' evidence is potentially admissible. As to documents and source code produced by AMD, each such exhibit will be offered at trial in this case pursuant to a sponsoring witness with direct knowledge of its provenance, an authenticity stipulation, or some appropriate combination that will establish that these documents are what they purport to be. *See* Fed. R. Evid. 901(b) (nonexclusive list of examples of evidence that will satisfy the authentication requirement, including testimony of a witness with knowledge); 31 Wright & Miller, *Fed. Prac. & Proc. Evid.* § 7105 (2d ed. Apr. 2025 update) ("Authentication also can be accomplished through judicial admissions such as stipulations, pleadings, and production of items in response to subpoena or other discovery request.").

And to be clear, there is no serious dispute that any of the AMD documents submitted by Plaintiffs (all of which HP's own attorneys have access to) are actually inauthentic. Given the circumstances surrounding the AMD documents offered as summary judgment evidence here—they were produced by AMD, pursuant to a shared ESI protocol and protective order, in a related case; they appear to be actual AMD documents and communications on their face; they have been identified to AMD itself, and AMD has not contested a single exhibit as inauthentic; AMD witnesses have been examined on, or submitted declarations discussing, nearly every proffered document—there is a "prima facie aura of reliability" to these documents. *See Oglesby v. Coca-Cola Bottling Co. of Chi./Wis.*, 620 F. Supp. 1336, 1344 (N.D. Ill. 1985) (quoting *Olympic Ins. Co. v. H.D. Harrison, Inc.*, 418 F.2d 669, 670 (5th Cir. 1969)); *see also Am. Fed'n of Musicians of U.S. & Canada v. Paramount Pictures Corp.*, 903 F.3d 968, 976 (9th Cir. 2018) ("Given the 'contents, substance ... [and] other distinctive characteristics of the item,' Fed. R. Evid. 901(b)(4),

-15-

plus the fact that it was produced by Paramount in discovery, a reasonable juror could find that the email is what AFM claims it is."); *Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 647 (9th Cir. 2016) (Thomas, C.J., concurring in part) ("[A] longstanding rule of authentication is that documents may be authenticated by having been produced in discovery." (citing *Orr*, 285 F.3d at 777; *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n.12 (9th Cir. 1996); 1 Fed. Prac. & Proc. Evid. § 7105 (1st ed.))).

### 3.    HP's hearsay argument is similarly out of date and unfounded

HP's next evidentiary argument is that AMD-produced evidence is "inadmissible hearsay"—again relying on *Orr*. HP Reply at 3-4. HP's hearsay argument is nearly identical to its authenticity argument, and it suffers from essentially the same basic defect: it relies on an outdated standard concerning the *form* of evidence that can be considered at summary judgment. As Judge Gilliam aptly explained in *Associated Industries Insurance Co.*:

> Under Federal Rule of Civil Procedure 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." As the Ninth Circuit has noted, "Rule 56 was amended in 2010 to eliminate the unequivocal requirement that evidence submitted at summary judgment must be authenticated[.]" *Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016); *see also Harlow v. Chaffey Cmty. Coll. Dist.*, No. 21-55349, 2022 WL 4077103, at *1 (9th Cir. Sept. 6, 2022) . . . . ***Similarly, "[i]f the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document— the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment."*** *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021). "Accordingly, district courts in this circuit have routinely overruled authentication and hearsay challenges at the summary stage where the evidence could be presented in an admissible form at trial[.]" *Hodges v. Hertz Corp.*, 351 F. Supp. 3d 1227, 1232 (N.D. Cal. 2018).

2023 WL 2874021 at *3 (emphasis added).

Noticeably, HP does not actually identify a single specific statement that it seeks to exclude on hearsay grounds—it just generically asks the Court to exclude all AMD-produced documents, and five HP-produced documents as well, in their entirety due to alleged "hearsay." HP Reply at

**FILED UNDER SEAL**

3-4. *Cf. Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) ("[T]o the extent the defendants intended to object to only *parts* of the documents, their unexplained generalized objections were insufficient to raise such an objection."). But in any event, Plaintiffs will present all evidence at trial in conformance with the Rules of Evidence, including Rules 801-03 and 901, including through live witnesses and appropriate stipulations to avoid any reliance on hearsay not otherwise admissible or subject to an exception. *See Sandoval*, 985 F.3d at 666 (rejecting hearsay objection at summary judgment stage where "the objected-to documents either reflect the personal knowledge of individuals who could be called to testify at trial or will likely be admissible at trial under exceptions to the hearsay rule").

## II.    PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT THAT HP KNEW OF THE DESIGN DEFECT PRIOR TO PLAINTIFFS' PURCHASES

Plaintiffs also seek partial summary judgment that HP knew of the design defect in its AMD-based computers prior to Plaintiffs' purchases of them. Plaintiffs' opening brief laid out evidence that:

- HP knew of fTPM-related stuttering caused by the PSP design defect by no later than mid-2017, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇;

- HP knew of security problems caused by the PSP design defect by no later than June 1, 2020, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇; and

- HP knew of stability issues caused by the PSP design defect by no later than September 2021, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

**FILED UNDER SEAL**

HP's brief offers no meaningful evidentiary rebuttal to the above facts, all of which are documented in black and white, through AMD and HP emails and incident reports. Instead, HP principally hopes to ***exclude*** the above evidence based on outdated Rule 56 case law—hopes that should be rejected for the reasons explained earlier in Section I.B. In view of the actual evidence, it is materially undisputed that HP knew of the PSP design defect in its products no later than mid-2017; knew of performance problems caused by that defect no later than mid-2017; knew of security problems caused by that defect no later than June 1, 2020; and knew of stability problems caused by that defect no later than September 2021.

The *Pietosi* plaintiffs purchased their defective HP computers on the following dates, which are not materially disputed:

- Taran Pietosi: May 2020

- Laura Lake: December 3, 2019

- Aniette Bruzos de Logorz: August 8, 2021[6]

HP therefore knew of the PSP design defect, and of performance problems (to wit, fTPM-related stuttering) caused by the PSP design defect, prior to each Plaintiff's purchase of an HP computer. HP has identified no contrary evidence on this issue.

## CONCLUSION

The Court should grant Plaintiffs partial summary judgment that the HP computers they bought were defective when sold, and that HP knew of that defect prior to Plaintiffs' respective purchases.

---

[6] Rey Rain Ramos, who has not yet been added as a *Pietosi* plaintiff and California class representative, but who has been proposed as such in a proposed amended complaint, purchased his defective computer in April 2021.

**FILED UNDER SEAL**

Dated: April 25, 2025                          Respectfully submitted,

                                               By:  */s/ Brian J. Dunne*
                                                    Brian J. Dunne

**BATHAEE DUNNE LLP**                          **HAGENS BERMAN SOBOL SHAPIRO**
Brian J. Dunne (CA 275689)                     **LLP**
bdunne@bathaeedunne.com                        Christopher R. Pitoun (SBN 290235)
Edward M. Grauman (*pro hac vice*)             christopherp@hbsslaw.com
egrauman@bathaeedunne.com                      Abigail D. Pershing (SBN 346467)
901 South MoPac Expressway                     abigailp@hbsslaw.com
Barton Oaks Plaza I, Suite 300                 Emilee N. Sisco (*pro hac vice*)
Austin, TX 78746                               emilees@hbsslaw.com
Tel.: (213) 462-2772                           301 North Lake Avenue, Suite 920
                                               Pasadena, CA 91101
Yavar Bathaee (CA 282388)                      Tel.: (213) 330-7150
yavar@bathaeedunne.com
Andrew C. Wolinsky (CA 345965)                 *Attorneys for Plaintiffs and the*
awolinsky@bathaeedunne.com                     *Proposed Classes*
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

Allison Watson (CA 328596)
awatson@bathaeedunne.com
3420 Bristol Street, Suite 600
Costa Mesa, CA 92626
Tel: (213) 458-7075