UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARAN PIETOSI, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>HP, INC.,<br><br>　　　　　Defendant. | Case No.  22-cv-04273-VC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART HP'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; DENYING HP'S DAUBERT MOTIONS; ORDER RE SEALING**<br><br>Re: Dkt. Nos. 221, 253, 296, 299, 302 |

　　　　The parties' cross-motions with respect to causation are denied. HP's motion for summary judgment is granted as to the plaintiffs' fraud-based claims and unjust enrichment claim, as well as any claims based on alleged security issues. HP's motion is denied with respect to the plaintiffs' implied warranty claims. This ruling assumes the reader is familiar with the applicable legal standard and with the arguments and evidence presented by the parties.

　　　　**Causation.** HP asserts that the plaintiffs have not shown causation because they have only presented self-serving statements and because their counsel and experts never physically examined the plaintiffs' computers to assess the stuttering and rule out alternative causes. But at summary judgment, the plaintiffs don't need to rule out other potential causes of stuttering; they need to present evidence that would allow a reasonable jury to find that it was caused by the fTPM. *See generally Pacific Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1168 (9th Cir. 2013) ("Causation is an intensely factual question that should typically be resolved by a jury."). The plaintiffs point to the testimony of experts who were able to replicate the stutter on computers where the fTPM was artificially stressed, as well as documents from

AMD, whose processors HP built PCs around, that could lead a reasonable jury to conclude that the stuttering was caused by a design defect in the products HP sold.

Nor are the plaintiffs entitled to summary judgment on this issue because the evidence they present does not indisputably show that the fTPM caused the stuttering on the plaintiffs' computers. For instance, HP's expert testified that the fTPM-related stutter that HP was made aware of in 2022 was so infrequent and short that the general population was unlikely to notice it. A reasonable jury could find that HP's evidence about the fTPM-related stutter is inconsistent with the stutter the plaintiffs complained of, notwithstanding the plaintiffs' declarations at the summary judgment stage that the stutter they experienced was similar to the stutter shown in videos made by the plaintiffs' and AMD's experts.

HP also notes that the plaintiffs haven't shown that the fTPM was even enabled on their computers. At the hearing and in its order requesting supplemental briefing, the Court asked the parties to address whether the specific models of HP computers the plaintiffs owned would have had the fTPM enabled by default. Neither side provided an entirely clear answer. The plaintiffs did present evidence that suggests that the plaintiffs' computers would have had the fTPM enabled, even though the evidence is far from conclusive.[1] Thus, at trial, they will have to convince a reasonable jury that they had fTPM enabled on their computers in the first place. But if a jury so concludes, it could conclude by a preponderance of the evidence that the fTPM caused stuttering.

However, to the extent that the plaintiffs' claims are based on security issues, as in *Day v. AMD*, the plaintiffs have not shown enough evidence to make a claim on those grounds actionable. *See* Case No: 3:22-cv-4305, Dkt. No. 389.

**Fraud-based claims.** Both sides agree that, to succeed on their fraud-based claims, the

---

[1] For instance, the plaintiffs point to an HP email that shows that "non-China SKU" products were shipped with the fTPM enabled, whereas "China SKU" products were not. Although one might infer that the plaintiffs' computers fall in the "non-China SKU" products category, it is not entirely clear that the groupings refer to where the products were sold, as opposed to where they were made. Moreover, it is not clear that the email is talking about all HP PCs, as opposed to some subset of HP PCs that may or may not be representative of the PCs owned by the plaintiffs.

2

plaintiffs must prove that HP had knowledge of an fTPM-related stuttering issue before the plaintiffs purchased their computers.

The key evidence the plaintiffs point to is a series of emails produced in *Day v. AMD*. HP urges the Court not to consider this evidence, but the Court has already denied HP's previous motion to strike evidence from the *Day* case (see Dkt. No. 225). But even considering the emails produced in that case, a reasonable jury could not conclude that, in 2017, HP was aware of a stuttering problem that it chose to withhold from consumers. The emails cited by the plaintiffs show AMD engineers discussing a stuttering problem and suggest that AMD may have been aware of a persisting problem. But with respect to HP, all the email thread shows—and this too through the secondhand report of an AMD engineer—is that, at some point, HP indicated to AMD that it was satisfied with AMD's troubleshooting of the problem. Based on this, a reasonable jury could not infer that HP had the mental state for fraud.

In their supplemental brief, the plaintiffs point to two other email threads. One includes employees from AMD (including some of the engineers on the 2017 email thread mentioned above), HP, and Wistron, a third party apparently involved in testing firmware supplied by AMD. The thread has the subject "fTPM fw for audio distortion" and appears to discuss testing related to the audio distortion issue that AMD discussed in 2017. But this thread shows that someone from Wistron tested the audio distortion issue and reported the result "PASS." Although the thread continued, seemingly moving on to other, potentially related technical issues, one could not conclude from this that HP knew of an ongoing stuttering issue that it should have disclosed to the plaintiffs. Rather, on this record, the only reasonable conclusion is that HP was satisfied that audio distortion would not be a problem. The other email thread is about audio drivers. But that conversation appears to be about an issue whereby certain units were not detecting plugged-in headphones. It's difficult to see how the email thread is even related to the alleged fTPM defect.

Thus, overall, the record could not support a jury finding that HP had the requisite

knowledge for a fraud claim.[2]

**Breach of implied warranty of merchantability claims.** HP argues that the plaintiffs' claim for breach of implied warranty under the California commercial code fails because of a lack of privity, given that the plaintiffs did not purchase their computers directly from HP, but rather, from retailers like Walmart and Amazon.com. But as discussed in *Day*, there is an exception for third-party beneficiaries that would seem to cover the plaintiffs here. *See* Case No: 3:22-cv-4305, Dkt. No. 110; *see also In re Natera Prenatal Testing Litigation*, No. 22-CV-00985-JST, 2023 WL 3370737, at *9 (N.D. Cal. Mar. 28, 2023); *Gilbert Financial Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 69 (1978). Because HP did not address this issue, the Court cannot conclude that HP must prevail as a matter of law on the plaintiffs' merchantability claim under the California commercial code.[3]

**Unjust enrichment claims.** Courts can construe unjust enrichment claims as quasi-contract claims under California law. But the plaintiffs have not provided the Court with any basis to construe their claim as such. The amended complaint alleges that it would be unjust to let HP retain profits obtained through falsehoods and misrepresentations. But there isn't anything on the record that shows that HP's profits can be attributed to misrepresentations HP made to the

---

[2] The plaintiffs assert that further targeted discovery is required before the Court can grant summary adjudication in HP's favor, in light of "clear procedural evidence that HP affirmatively engineered an incomplete record on the details of its 2017 fTPM stutter investigation." But the plaintiff's characterization of the discovery dispute does not appear to be accurate. The plaintiffs say that Judge Kim declined to order HP to produce documents from prior to 2018. But the minute order and transcript from that discovery hearing show that Judge Kim allowed the plaintiffs another chance to make a more focused request about documents from prior to 2018 and told the parties that they could resubmit the dispute to the Court if the parties could not agree on the new requests after meeting and conferring. In light of that ruling and the fact that HP did produce a pre-2018 email that appears to be about AMD's 2017 investigation, the Court is not convinced that HP affirmatively engineered an incomplete record or that further discovery is required before ruling for HP.

[3] HP did not move for summary judgment on the ground that the stuttering problem, even if caused by the fTPM, did not rise to the level of a defect under California law. In its reply, HP makes a fleeting request for summary judgment on this issue by referencing AMD's summary judgment motion, but that's obviously inadequate. It's worth noting that the question whether the stuttering rose to the level of a defect in stand-alone processors purchased by people to build their own computers is potentially different from the question whether the stuttering rose to the level of a defect in HP laptops purchased for the purposes for which such laptops are ordinarily used.

plaintiffs. Moreover, even if the Court were to construe the claim as a quasi-contract claim seeking restitution, the equitable claim could only go forward if the plaintiffs could show they did not have an adequate remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020). Because no such showing is made here, the claim fails as a matter of law.

**Daubert motions.** HP's motions to exclude the plaintiffs' experts on the basis of reliability and relevance are denied. HP asserts that the experts' opinions are based on speculation and do not "fit" this case because the experts did not inspect or test the plaintiffs' computers. Although the Court is not weighing in at this juncture about the admissibility of every aspect of the experts' opinions, there is nothing to suggest that the technical analysis provided by the plaintiffs' experts should be excluded wholesale. HP's motions regarding the scope of the plaintiffs' experts' testimony are denied without prejudice to being reraised pre-trial.

**Sealing motions.** Non-party AMD's motion to seal (Dkt. No. 302) is granted. In light of the more limited sealing sought in that motion, the administrative motions to consider whether another party's materials should be sealed (Dkt. Nos. 296 and 299) are denied. The plaintiffs are ordered to refile the materials at Dkt. No. 296, with the limited redactions described in AMD's motion, within 7 days of this order.

**IT IS SO ORDERED.**

Dated: October 30, 2025

VINCE CHHABRIA
United States District Judge