BEATRICE B. NGUYEN (SBN 172961)
  bbnguyen@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center
26th Floor
San Francisco, CA 94111
Telephone: 415.986.2800
Facsimile:  415.986.2827

ASTOR H.L. HEAVEN (*pro hac vice*)
ELI L. BERNS-ZIEVE (*pro hac vice*)
  aheaven@crowell.com
  eberns-zieve@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Ave. NW
Washington, DC 20004
Telephone: 202.624.2500
Facsimile:  202.628.5116

*Attorneys for Defendant HP Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TARAN PIETOSI, REY RAIN RAMOS, LAURA LAKE, and ANIETTE BRUZOS DE LOGORZ, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HP INC., a Delaware corporation, <br><br> Defendant. | Case No. 3:22-cv-04273-VC <br><br> **DEFENDANT HP INC.'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF REY RAIN RAMOS** <br><br> Hon. Vince Chhabria <br><br> Date: April 2, 2026 <br> Time: 10:00 a.m. <br> Courtroom: 4 |

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 2, 2026, at 10:00 AM PT, or as soon thereafter as

this matter may be heard before the Honorable Vince Chhabria, U.S. District Judge, U.S. District

Court for the Northern District of California, in Courtroom 4 located at 450 Golden Gate Avenue,

1    San Francisco, CA 94102, Defendant HP Inc. ("HP") will and hereby does move this Court,

2    pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting summary

3    judgment to HP as to Plaintiff Rey Rain Ramos.

4         HP makes this Motion based upon this Notice of Motion, the accompanying

5    Memorandum of Points and Authorities, the Declaration of Astor H.L. Heaven and supporting

6    exhibits, any reply memorandum, evidence and argument of counsel submitted at the hearing, and

7    any such other matters the Court may consider.

8

9    Dated: February 19, 2026

Respectfully submitted,

10

*/s/ Beatrice B. Nguyen*
Beatrice B. Nguyen (SBN 172961)

11
bnguyen@crowell.com
CROWELL & MORING LLP

12
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111

13
Telephone: 415.986.2800

14

15
Astor H.L. Heaven (*pro hac vice*)
Eli Berns-Zieve (*pro hac vice*)

16
aheaven@crowell.com
eberns-zieve@crowell.com

17
CROWELL & MORING LLP
1001 Pennsylvania Ave. NW

18
Washington, D.C. 20004
Telephone: 202.624.2599

19

20
*Attorneys for Defendant HP Inc.*

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................. 1

II.     STATEMENT OF UNDISPUTED FACTS ......................................................... 2

III.    LEGAL STANDARD ........................................................................................... 6

IV.     SUMMARY JUDGMENT ARGUMENT ............................................................ 7

    A.      Ramos' California Breach of Implied Warranty of Merchantability Claims (Counts Four, Eight, and Nine) All Fail. .............................................. 7

        1.      Ramos cannot show any "defect" under California law. ........................... 7

        2.      HP has no implied warranty obligations for computers it did not sell. .... 10

        3.      Ramos cannot establish privity. ................................................................ 11

        4.      The third-party beneficiary exception is inapplicable. ............................. 12

        5.      Summary judgment to HP on Ramos' implied warranty claim is warranted even if Ramos were a third-party beneficiary. ...................... 14

    B.      Ramos' Remaining Claims All Fail for The Same Reasons Set Forth in This Court's October 30, 2025, Order. ...................................................... 16

V.      CONCLUSION .................................................................................................... 16

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Allgood v. R.J. Reynolds Tobacco Co.*,
  80 F.3d 168, 170–71 (5th Cir. 1996)........................................................................ 10

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...................................................................................................... 7

*Baltazar v. Apple, Inc.*,
  No. CV–10–3231–JF, 2011 WL 3795013 (N.D. Cal. Aug. 26, 2011) ................... 10

*California Emergency Physicians v. PacifiCare of California*,
  111 Cal.App.4th 1127 (2003) ..................................................................................... 13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...................................................................................................... 6

*Clemens v. DaimlerChrysler Corp.*,
  534 F. 3d 1017 (9th Cir. 2008) .............................................................................. 12, 13

*Doe v. Wal-Mart Stores, Inc*.,
  572 F.3d 677 (9th Cir. 2009) ...................................................................................... 14

*E. Aviation Grp., Inc. v. Airborne Express, Inc*.,
  6 Cal.App.4th 1448 (1992) .......................................................................................... 13

*Gilbert Financial Corp. v. Steelform Contracting Co.*,
  82 Cal.App.3d 65, 145 Cal. Rptr. 448 (1978) ............................................................ 12

*Goonewardene v ADP LLC*,
  6 Cal. 5th 817 (2019) ................................................................................................... 13

*Jones v. ConocoPhillips*,
  198 Cal. App. 4th 1187 (2011) .................................................................................... 11

*Kent v. Hewlett-Packard Co.*,
  No. 09-5341 JF (PVT), 2010 WL 2681767 (N.D. Cal. July 6, 2010)........................... 9

*Knowles v. Arris Int'l PLC*,
  No. 17-CV-01834-LHK, 2019 WL 3934781 (N.D. Cal. Aug. 20, 2019), *aff'd*,
  847 F. App'x 512 (9th Cir. 2021) ...................................................................... 7, 8, 10

*Lessin v. Ford Motor Co.*,
  756 F. Supp. 3d 885 (S.D. Cal. 2024), *amended on reconsideration in part*,
  No. 19-CV-01082-AJB-AHG, 2025 WL 97598 (S.D. Cal. Jan. 14, 2025) .............. 7

*Long v. Hewlett-Packard Co.*,
   2007 WL 2994812 (N.D. Cal. July 27, 2007) ......................................................................... 15

*Mathis v. Milgard Mfg., Inc.*,
   No. 316CV02914BENJLB, 2018 WL 2095757 (S.D. Cal. May 7, 2018) ............................. 11

*Minkler v. Apple, Inc.*,
   65 F. Supp. 3d 810 (N.D. Cal. 2014) ............................................................................... 8, 10

*In re Nexus 6P Prods. Liab. Litig.*,
   293 F. Supp. 3d 888 (N.D. Cal. 2018) .................................................................................. 13

*Quackenbush v. AM. Honda Motor Co., Inc.*,
   650 F. Supp. 3d 837 (N.D. Cal. 2023) ............................................................................ 11, 12

*Rutledge v. Hewlett-Packard Co.*,
   238 Cal.App.4th 1164 (2015) ................................................................................................ 15

*Schauer v. Mandarin Gems of California, Inc.*,
   125 Cal. App. 4th 949, 23 Cal.Rptr.3d 233 (2005) ............................................................... 13

*Scott v. Harris*,
   550 U.S. 372 (2007) ................................................................................................................. 7

*In re Seagate Tech. LLC Litig.*,
   233 F. Supp. 3d 776 (N.D. Cal. 2017) .................................................................................. 12

*Souza v. Westlands Water Dist.*,
   135 Cal. App. 4th 879 (2006) ................................................................................................ 14

*Tietsworth v. Sears*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) ....................................................................... 7, 8, 10

*Troup v. Toyota Motor Corp.*,
   545 Fed. App'x 668 (9th Cir. 2013) ........................................................................................ 8

*Est. of Tucker ex rel. Tucker v. Interscope Recs., Inc.*,
   515 F.3d 1019 (9th Cir. 2008) ................................................................................................. 6

**Statutes**

Cal. Com. Code § 2314 ................................................................................................... 10, 11

U.C.C. § 2- 314 cmt. 1 ............................................................................................................ 10

U.C.C. § 10:25, n. 3 ................................................................................................................ 10

**Other Authorities**

Fed. R. Civ. P. 56(a) ................................................................................................................. 6

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3       Plaintiffs first filed suit more than three and a half years ago, alleging HP Inc. ("HP")

4   computers purchased from January 1, 2019, to the present are defective because they contain a

5   "defectively designed" AMD manufactured firmware Trusted Platform Module ("fTPM") that

6   allegedly causes "invasive stuttering in audio and video playback" and renders "HP computers

7   uniquely vulnerable to catastrophic firmware attacks." Dkt. No. 13, ¶¶ 3, 30, 32-33. Plaintiffs'

8   claims all centered around the notion that HP knew about a design defect in its computers,

9   intentionally hid it, and then sold the devices to putative class members, fully aware that it was

10  placing defective devices into the stream of commerce. On October 30, 2025, this Court granted

11  summary judgment to HP on "plaintiffs' fraud-based claims and unjust enrichment claim, as well

12  as any claims based on alleged security issues," but allowed Plaintiffs' implied warranty of

13  merchantability claims to proceed. Dkt. No. 312 at 1.

14      Plaintiff Rey Rain Ramos ("Ramos") has since joined Plaintiffs' case on behalf of the

15  putative California class. *See* Dkt. No. 317. Ramos' allegations are substantively identical to

16  those of Plaintiffs Taran Pietosi, Laura Lake, and Aniette Bruzos de Logorz. As a consequence,

17  the Court should grant summary judgment as to Ramos' fraud-based claims, unjust enrichment

18  claim, and all claims based on alleged security issues because the Court's reasoning in its October

19  30, 2025, Order equally applies to Ramos' claims. *See* Dkt. No. 312.

20      In addition, the Court should grant summary judgment on Ramos' implied warranty of

21  merchantability claims for the following three reasons.

22      First, Ramos' laptop did not suffer from a "fundamental defect" rendering it unfit for its

23  ordinary purpose. Ramos' laptop performed all the tasks and functions that it was intended to

24  perform. That Ramos downloaded unsuitable software and applications that pushed the device far

25  beyond its capabilities did not render the device defective, or unmerchantable.

26      Second, implied warranty of merchantability claims require actual evidence of a sale,

27  which Ramos cannot provide. In fact, Ramos is unable to recall any of the specific circumstances

28  surrounding his purported acquisition of the device, including where he purchased the device, the

price of the device, how he decided to purchase an HP device, or under what circumstances.

Third, Ramos cannot establish privity with HP. The undisputed evidence establishes that Ramos did not purchase the device directly from HP. And the third-party beneficiary exception to privity is no succor—both because it is not legally or factually available, and because even if it were, Ramos would be limited to asserting HP's standard, one-year, Limited Warranty, which dooms his claims. Ramos' implied warranty claims thus cannot survive summary judgment.

Accordingly, HP respectfully requests that the Court grant summary judgment in its favor on all of Ramos' claims.[1]

## II.    STATEMENT OF UNDISPUTED FACTS

As noted in HP's prior summary judgment motion[2] (Dkt. No. 221), this case is about Trusted Platform Modules ("TPMs"). TPMs are security devices that became standard in personal computers by at least 2005 and were designed to provide basic security features such as the generation, storage, and transfer of encryption keys. *Id.* at 2. Plaintiffs' case centers on fTPMs, the firmware version of a TPM. Despite acknowledging at his deposition that he does not understand the purpose or functionality of an fTPM (*see* Ex. 1 at 62:5-20)[3], Ramos alleges an AMD-manufactured processor containing an fTPM caused "pervasive" stuttering on his computer when he used certain applications and when he played certain computer-based video games.

Ramos is currently a full-time student at the University of California at Berkeley. Ex. 1 at 16:1-12. He is in the second year of a four-year program studying film and anthropology. *Id.* Beginning in the 1990s, Ramos created Rain Art Studios, a business that does video and graphics work, mostly for individual clients; the business continues to the present. *Id.* at 18:24-25, 19:13-22. Ramos testified that the business earned, on average, less than $5,000 a year, and that it was not lucrative. *Id.* at 19:3-12. Profitability notwithstanding, Ramos needed a device to facilitate his

---

[1] Pursuant to the Court's November 25, 2025, Minute Entry (Dkt. No. 317), accompanying this Motion is Defendant HP Inc.'s Administrative Motion to Adjudicate Merchantability as to Plaintiffs Pietosi, Lake and Bruzos de Logorz asking that the Court grant summary judgment as to all Plaintiffs on the implied warranty of merchantability claims.

[2] HP incorporates those facts here.

[3] All exhibits are attached to the concurrently filed Declaration of Astor H.L. Heaven in Support of Defendant HP Inc.'s Motion for Summary Judgment ("Heaven Decl.").

1   video and graphics work in furtherance of his business venture. He stated that he purchased an

2   "HP 14-dk0024wm 3200U laptop containing an AMD Ryzen 3 series 3200U SOC (the "HP

3   Laptop")"—in or around April 2021 "from a brick-and-mortar chain computer store . . . in Long

4   Beach, California." Ex. 2 at 12, 42. Ramos had no recollection of where or under what

5   circumstances he purchased the HP Laptop; there is no evidence in the record of the retailer from

6   which Ramos purchased his HP Laptop; and there is no evidence of whether HP sold Ramos' HP

7   Laptop to the unidentified retailer. *See generally* Exs. 1 and 2. But, assuming *arguendo* that HP

8   sold Ramos' HP Laptop to the unidentified retailer, HP's reseller agreements disclaim all

9   warranties except for the Limited Warranty provided to end users.

10      The record reflects that Ramos opted for a budget-level laptop which he then pushed

11  beyond the device's capabilities, and thus its intended purpose. Ramos testified at his deposition

12  that at the time of purchase he was not "very well off," that he was going through a "difficult

13  time," and that he was "limited on [his] funds," so he was pursuing an "affordable" device below

14  a certain price point, with the "best hardware for the best price." Ex. 1 at 69:22-70:25, 79:9-80:4.

15  Although he could not specify the price point, Ramos did confirm that the price point was much

16  lower than various other options that he had considered. *Id*. at 80:1-4. The device specifications

17  confirm that the HP Laptop was a budget-friendly model designed for basic computing and

18  performing common tasks such as web browsing, document editing, email, and other routine

19  computing functions. Ex. 3, ¶ 26.

20      Ramos nevertheless used his HP Laptop for more than basic computing. As part of the

21  video and graphics work he was doing for clients, Ramos installed an additional 16 GB of

22  memory, and he downloaded multiple high-level video and graphics applications including

23  Photoshop, Premier, Zoom, Adobe, Vegas, Final Cut Pro, and Avid. Ex. 2 at 13. Ramos claims to

24  have "experienced severe and persistent audiovisual stuttering" while using those applications

25  and while playing videogames like League of Legends and Diablo. *Id.* He says he experienced

26  "the most extensive stuttering" while editing photos and videos, and he "attributed the stuttering

27  to higher performance tasks involving more compute [*sic*] power[.]" *Id.* Ramos describes the

28  stuttering as particularly problematic when editing "large video files that could sometimes span

1   up to an hour[.]" *Id.*

2   Ramos' experience is consistent with HP's expert's analysis of the device. HP's expert,

3   Dr. Brian D'Andrade, concluded that the software applications that Ramos was using likely

4   exceeded the device's computing capacity. Specifically, Dr. D'Andrade noted that Ramos' HP

5   Laptop's integrated GPU shares RAM with the CPU, rather than having its own dedicated video

6   memory which, while adequate for everyday tasks like basic web browsing and office

7   productivity, is not designed for the high-end gaming or heavy video editing that Ramos was

8   doing. *Id.* ¶ 24. Dr. D'Andrade further noted that Ramos' HP Laptop's RAM (4GB), screen

9   resolution (1366 x 768), and memory storage (128 GB) are less than would be included in a

10  laptop intended for heavy gaming or video editing. *Id.* ¶ 25. A laptop marketed and intended for

11  high-end video editing and gaming would likely have Full HD (1080p) screen resolution and

12  more than 4 GB of RAM. *Id.* ¶¶ 25, 28. Dr. D'Andrade also noted that Ramos added a 16 GB

13  RAM module, which created a mismatched configuration, which can lead to performance

14  inconsistencies—particularly when gaming or video editing. *Id.* ¶¶ 26-28.

15  Stuttering did not occur during the light computing tasks for which Ramos' budget laptop

16  was intended. For example, Ramos conceded at his deposition that stuttering did not occur while

17  using email, and he had no evidence or recollection of stuttering occurring on any of the various

18  other computer functions, including Microsoft Word, Excel, PowerPoint, or the computer

19  calculator. Ex. 1 at 124:14-125:11.

20  Dr. D'Andrade further confirmed during his testing of the HP Laptop that it was

21  functioning as intended. Dr. D'Andrade ran a program called "Tpm2Tester," a quality assurance

22  tool used to perform compliance testing, feature verification, and error simulation by stressing

23  TPM operations on the device. Ex. 3, ⁋ 43. While running "Tpm2Tester," Dr. D'Andrade

24  simultaneously opened and ran various programs including Word, Acrobat Reader, Notepad,

25  Calculator, and File Explorer, and the testing revealed that "all applications functioned normally

26  without any performance or stability issues, even while the TPM performed a variety of

27  functions." *Id.*, 44. Dr. D'Andrade detected no stuttering in those applications. Dr. D'Andrade

28  sought to replicate the TPM stress tests identified in Plaintiffs' expert Steve Novak's rebuttal

report, and he determined that there "were no noticeable audio dropouts or video stuttering" sufficient to compromise the functionality of the device. *Id.*, 45.

The only actual evidence of stuttering comes from Plaintiffs' expert—not Ramos. On Wednesday, February 11, 2026 (two days prior to his deposition), Ramos' counsel produced five videos in support of Ramos' stuttering claims. Based on representations by counsel, the videos were purportedly made by Plaintiffs' expert Steve Novak, and they appear to depict stress testing conducted by Mr. Novak on Ramos' device. *See* Ex. 4. The videos show a screen with various open applications including Chrome, MS Edge, Visual Studio, YouTube, Paint, Terminal Window, and various other unidentified applications. Ex. 3, ¶ 49. Apparently intended to show the "severe and persistent" stuttering that Ramos described in his interrogatory responses, the videos show little more than short micro-stutters in two applications—lasting less than one second—all of which were generated during stress testing which is an artificial operating environment and not how devices run in the ordinary course of usage. *See Id*. At his deposition, Ramos testified he had no role in the testing, nor did he know that his computer had been tested, and he could not answer basic questions about the videos. He testified he did not create the videos, did not know who had made them, and had seen them for the first time the day before his deposition; he in fact did not even recognize it was his computer. Ex. 1 at 109:15-111:1, 111:14-22, 112:2-5, 113:11-22. The videos are described further below.

| **Video Evidence Bates No.** | **What the Evidence Shows** |
| --- | --- |
| RAMOS_HP_010740 (Ex. 6) | This eight-second-long video appears to depict minor-stuttering—lasting less than a second—during an animated YouTube video of a high-speed police chase and while using Visual Studio. Both applications continue functioning despite the minor stutters. |
| RAMOS_HP_010741 (Ex. 7) | This nine-second-long video appears to depict minor-stuttering—lasting less than a second—during an animated YouTube video of a high-speed police chase and while using Visual Studio. Both applications continue functioning despite the minor stutters. |
| RAMOS_HP_010742 (Ex. 8) | This nine-second-long video appears to depict minor stuttering—lasting less than one second—during a YouTube video of an |

| **Video Evidence Bates No.** | **What the Evidence Shows** |
|---|---|
| | Avatar movie and while using Visual Studio. Both applications continue functioning despite the minor stutters. |
| RAMOS_HP_010743 (Ex. 9) | This fifteen-second-long video appears to depict minor stuttering—lasting less than one second—during from the same movie and while using Visual Studio. Both applications continue functioning despite the minor stutters |
| RAMOS_HP_010744 (Ex. 10) | This twelve-second-long video appears to depict minor stuttering—lasting less than one second—during an unidentified video and while using Visual Studio. Both applications continue functioning despite the minor stutters. |

Ramos conceded that despite the purported stuttering, he continued to use the HP Laptop for approximately six more months until he purchased a different computer, which he then subsequently replaced with a MacBook Air, which he was required to use by the academic program in which he had enrolled. *Id*. at 81:20-24; Ex. 2 at 13-14. There is no evidence Ramos ever reported any stuttering to HP—at least prior to his joining this lawsuit.[4]

### III.    LEGAL STANDARD

The Court should grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where, as here, the party opposing summary judgment will have the burden of proof on an issue at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "[B]are allegations without evidentiary support" do not create a genuine dispute of material fact. *Est. of Tucker ex rel. Tucker v. Interscope Recs., Inc.*, 515 F.3d 1019, 1033 n.14 (9th Cir. 2008). Consequently, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247-48 (1986). "When opposing parties tell two different stories, one of which is

---

[4] Ramos is a serial litigant, who testified he has been a named class member in five class actions (including other lawsuits brought by Plaintiffs' counsel). Ex. 1 at 21:24-22:2, 26:18-27:3, 34:6-15.

1   blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

2   adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v.*

3   *Harris*, 550 U.S. 372, 380 (2007).

4   **IV.    SUMMARY JUDGMENT ARGUMENT**

5       **A.    Ramos' California Breach of Implied Warranty of Merchantability Claims
              (Counts Four, Eight, and Nine) All Fail.**

6

7       Ramos' breach of implied warranty of merchantability claims fail for three reasons. First,

8   Ramos cannot on this record prove a "fundamental defect" that renders his laptop unfit for its

9   ordinary purpose. The record is undisputed (1) that despite claiming "intrusive and persistent"

10  stuttering" on the applications that he downloaded for business and gaming purposes, the device

11  continued to function and Ramos continued to use his laptop for at least six months after he

12  claimed to have first experienced stuttering, and (2) there is no evidence that any of the various

13  other applications included on the device suffered from stuttering, a fact that HP's expert Dr.

14  D'Andrade confirmed. Summary judgment is warranted on this basis alone. Moreover, viable

15  implied warranty of merchantability claims require evidence of a sale, and, here, none exists.

16  Even if Ramos were able to overcome the lack of a defect or sale, he cannot overcome the lack of

17  privity with HP. Ramos' implied warranty of merchantability claims thus cannot survive

18  summary judgment.

19          **1.    Ramos cannot show any "defect" under California law.**

20      For an implied warranty of merchantability claim to survive summary judgment, a

21  plaintiff must show that a device was "unfit for its ordinary purpose," *Tietsworth v. Sears*, 720 F.

22  Supp. 2d 1123, 1142 (N.D. Cal. 2010), and that "the product did not possess even the most basic

23  degree of fitness for ordinary use," or their intended use. *Knowles v. Arris Int'l PLC*, No. 17-CV-

24  01834-LHK, 2019 WL 3934781, at *5 (N.D. Cal. Aug. 20, 2019), *aff'd*, 847 F. App'x 512 (9th

25  Cir. 2021) (citations and quotations omitted). A product "need not be perfect in every detail so

26  long as it 'provides for a minimum level of quality.'" *Lessin v. Ford Motor Co.*, 756 F. Supp. 3d

27  885, 910 (S.D. Cal. 2024), *amended on reconsideration in part*, No. 19-CV-01082-AJB-AHG,

28  2025 WL 97598 (S.D. Cal. Jan. 14, 2025) (granting summary judgment to defendant on

California implied warranty claims). A party making a claim for implied warranty of merchantability thus must do more than simply identify a defect. *Tietsworth*, 720 F. Supp. 2d at 1142. Rather, "a defect must drastically undermine a device's operation to render the device unmerchantable." *Knowles*, 2019 WL 3934781, at *5 (granting summary judgment in defendant's favor as plaintiffs failed to proffer evidence that the at issue modem did not possess even the most basic degree of fitness for ordinary use).

*Minkler v. Apple* is instructive. There, the plaintiff asserted an implied warranty of merchantability claim, alleging her iPhone was unfit for its ordinary purpose because of alleged defects with Apple Maps' software. The court dismissed the claim, noting (1) that the "iPhone 5 has a multitude of uses (including a phone, music player, game console, and web browser), and while plaintiff claims to have used Apple Maps, plaintiff never alleges that she used the iPhone solely for navigation," and (2) that although the plaintiff had alleged "several problems exist in the software, she has not alleged that Apple Maps failed to work at all or even that it failed to work a majority of the time." *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014); *see also Troup v. Toyota Motor Corp.*, 545 Fed. App'x 668, 669 (9th Cir. 2013) (holding that a Prius vehicle was fit for its ordinary purpose because a defect did not "compromise the vehicle's safety, render it *inoperable*, or *drastically reduce* its mileage range") (emphasis added).

The cases (including *Minkler*) interpreting and applying the law make clear (1) that the bar to establishing that a product was unfit for its ordinary purpose is high and (2) that Ramos falls far short of the minimum threshold standard for surviving summary judgment on his implied warranty of merchantability claims.

First, Ramos points to no evidence that his computer "failed to work at all or even that it failed to work a majority of the time." *Minkler*, 65 F. Supp. 3d at 819. Rather, the HP Laptop continued to perform all the functions that it was intended to perform. Ramos claims he suffered stuttering when using Photoshop, Premier, Adobe, Vegas, Final Cut Pro, and Avid (all applications that he downloaded for work purposes), but Dr. D'Andrade confirmed these applications were not intended for use on Ramos' Laptop. Final Cut Pro, for example, is a video editing application developed by Apple and was intended for use on Apple operating systems, not

on Windows devices like Ramos' HP Laptop. *See* Ex. 3, ¶ 57. Similarly, Ramos' HP Laptop's specifications are far below the recommended requirements for Avid. *Id.*, ¶ 58. Notably, Ramos' laptop did not stutter when he used it for its ordinary purpose. For example, Ramos conceded that the device did not stutter while he was using email, and he has no recollection nor does he claim that the device stuttered while using applications such as Word, Excel, PowerPoint, or PowerPoint. Ex. 1 at 124:14-125:11. Further, Dr. D'Andrade's examination confirmed that during stress testing of the fTPM, the device showed no signs of stuttering while running commonly used applications such as Word, Adobe, Notepad, Calculator, and File Explorer. Ex. 3, ¶ 44. Both Ramos' testimony and Dr. D'Andrade's inspection confirm that the HP Laptop was properly functioning and that it performed as intended.

Second, even if the HP Laptop stuttered as Ramos claims, the stuttering was minor and had little impact on the applications that he claims were at issue, specifically, or the HP Laptop, generally. Ramos produced five videos to support his stuttering allegations, but the videos undermine his "merchantability" claims. The videos showed less than one-second micro-stutters (created by Plaintiffs' expert during a stress test) on animated videos and on the Visual Studio application, and despite the micro-stutters, the applications all continued to operate, and the HP Laptop continued to function. *See supra* at 5-6. There is no evidence in the record that the fTPM or any purported resulting stuttering compromised Ramos' ability to use the various applications, and there is no evidence in the record that the fTPM compromised or affected any of the many other HP Laptop's applications, in any way. Indeed, Ramos acknowledged that he continued to use the HP Laptop for six additional months after he claims the stuttering began. Ex. 2 at 13. The stuttering episodes shown on the videos produced by Plaintiffs were little more than what courts in this District have deemed an "inconvenience," which have been rejected as an appropriate basis for a viable breach of the implied warranty of merchantability claim. *See Kent v. Hewlett-Packard Co.*, No. 09-5341 JF (PVT), 2010 WL 2681767, at *4 (N.D. Cal. July 6, 2010) (concluding that routine freezing and blue screen errors were mere inconvenience that did not render computers unfit for their ordinary purpose); *Baltazar v. Apple, Inc.,* No. CV–10–3231–JF, 2011 WL 3795013, at *3 (N.D. Cal. Aug. 26, 2011) (concluding that inconvenience is insufficient);

1    *Tietsworth*, 720 F. Supp. 2d at 1142–43 (holding that inconvenience in having to "restart"

2    allegedly defective washing machine does not support claim for breach of the implied warranty of

3    merchantability).

4        The record is clear that Ramos' HP Laptop was fit for its ordinary purpose. That Ramos

5    tried to use the computer for tasks beyond the device's intended purposes does not equate to a

6    defect or a lack of merchantability. Nor does stuttering of less than one second shown during

7    performance of a stress test. Ramos must show that the product did not possess even the most

8    basic degree of fitness for its ordinary purpose. *Knowles*, 2019 WL 3934781, at *5; *Minkler*, 65 F.

9    Supp. 3d at 819. He cannot do so, and his implied warranty of merchantability claims thus fail.

10        **2.    HP has no implied warranty obligations for computers it did not sell.**

11        Ramos' implied warranty of merchantability claims also fail because there is no evidence

12    that HP sold the computer to a retailer from which Ramos purchased his computer. The implied

13    warranty of merchantability is "implied in a contract for their sale if the seller is a merchant with

14    respect to goods of that kind." Cal. Com. Code § 2314. It requires a *seller*, and it does not arise in

15    the absence of a sale. *See, e.g.*, 1 White, Summers, & Hillman, Uniform Commercial Code §

16    10:25, n. 3 (6th ed.) ("Under 2-314, a plaintiff must prove that a merchant sold goods . . . .

17    [T]here can be no implied warranty without a sale."). In *Allgood v. R.J. Reynolds Tobacco Co.*,

18    the Fifth Circuit interpreted a UCC-based implied warranty statute identical to California's and

19    held, "[e]ven where a party has promoted a product, and made promises regarding that product, if

20    the party is not the actual seller a claim for breach of warranty will not lie." 80 F.3d 168, 170–71

21    (5th Cir. 1996). Comment 1 to Section 2-314 of the UCC further makes clear that "[t]he seller's

22    obligation applies to present sales as well as contracts to sell subject to the effects of any

23    examination of specific goods." U.C.C. § 2- 314 cmt. 1. Even states that do not require privity

24    require the defendant to have *sold the good in question*. As applied, there must be evidence HP

25    *sold Ramos' computer*, even if not to him.

26        No such evidence exists in the record. Ramos alleges HP manufactured his laptop, but

27    there is no evidence HP entered into a "contract for sale" with the retailer which ultimately sold

28    Ramos his laptop. In fact, Ramos does not even know where he purchased the HP Laptop, so

there is no evidence as to which retailer sold Ramos his laptop. *See* Ex. 2 at 42. To be sure, a manufacturer can have implied warranty liability even if it did not sell *directly* to the customer, but that liability must then be premised on the manufacturer having sold the computer to the retailer, which then sold it to the customer. Here, there is no evidence either that HP sold the laptop directly to Ramos (which Ramos admits), that HP sold the laptop to the unidentified "brick and mortar" seller from which Ramos says he bought his computer, or that HP even sold the laptop at all. Without facts that would make HP a "seller" for purposes of the implied warranty of merchantability, Ramos' claim cannot survive summary judgment.

### 3.     Ramos cannot establish privity.

Even if this Court were to find a sale on the part of HP is not required for an implied warranty claim to be viable, California law still requires that Ramos prove vertical privity with HP. *See Quackenbush v. AM. Honda Motor Co., Inc.*, 650 F. Supp. 3d 837, 842 (N.D. Cal. 2023) ("A plaintiff asserting breach of warranty claims under Section 2314 'must stand in vertical contractual privity with the defendant.'"). He cannot do so.

It is undisputed Ramos did not purchase his laptop from HP. *See* Ex. 2 at 42 ("Ultimately, Plaintiff Ramos purchased his HP Laptop new from a brick-and-mortar chain computer store (he cannot recall exactly which store) in Long Beach, California in or around April 2021"). In California, "'there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale.'" *Jones v. ConocoPhillips*, 198 Cal. App. 4th 1187, 1201 (2011) (quoting *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695 (1954)); *Mathis v. Milgard Mfg., Inc.*, No. 316CV02914BENJLB, 2018 WL 2095757, at *5 (S.D. Cal. May 7, 2018) ("An end consumer . . . who buys from a retailer is not in privity with a manufacturer."). That Ramos is an end user of an HP product does not make him a third-party beneficiary of any contract (of which there is no evidence) between HP and the unidentified retailer from which he bought his laptop. Nor are there any other facts in the record that would support finding privity between HP and Ramos. Ramos' implied warranty of merchantability claim thus fails at the summary judgment stage for want of privity with HP.

///

### 4.    The third-party beneficiary exception is inapplicable.

To evade the privity requirement, Ramos will likely argue that the third-party beneficiary exception to privity applies. It does not. The "exception" does not apply as a matter of law. And even if it did, there are no facts showing that Ramos satisfies the requirements here.

As a threshold matter, a plaintiff asserting breach of warranty claims "must stand in vertical contractual privity with the defendant." *Clemens v. DaimlerChrysler Corp.*, 534 F. 3d 1017, 1023 (9th Cir. 2008). But "some judges in this district have distinguished *Clemens* and have found that a broad third-party beneficiary exception exists[.]" *Quackenbush*, 650 F. Supp. 3d at 843 (declining to find exception to privity). Those jurists typically rely on the California Court of Appeal decision, *Gilbert Financial Corp. v. Steelform Contracting Co.*, 82 Cal.App.3d 65, 145 Cal. Rptr. 448, 450 (1978). But *Gilbert* expressly counsels against a broad application of the third-party beneficiary exception.

*Gilbert* involved a dispute over a construction contract the plaintiff had entered into with a company, which then subcontracted a portion of that work to the defendant. *Id.* at 67, 145 Cal.Rptr. 448. After realizing the workmanship was defective, the plaintiff sued the subcontractor-defendant. *Id.* The *Gilbert* court concluded that a third-party beneficiary may sue for breach of an implied warranty of merchantability absent privity "if he is more than incidentally benefitted by the contract." *Id.* at 70, 145 Cal.Rptr. 448. The *Gilbert* court also explicitly held its decision applied to "contracts of the creditor beneficiary type" and stated that "[t]o keep this opinion concise, we do not discuss the broader concepts...." *Id.* at 71, 145 Cal. Rptr. 448; *see also Quackenbush*, 650 F. Supp. 3d at 843 (noting same). The *Gilbert* court thus expressly limited its application of the exception to the context before it because a broad application of the third-party beneficiary doctrine would effectively eviscerate the privity requirement under California law. *Quackenbush*, 650 F. Supp. 3d at 844 ("If broadened in the manner plaintiff now seeks, the privity requirement would vanish. All end-user purchasers of consumer products could claim exempted status."); *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 787 (N.D. Cal. 2017) (reasoning such an interpretation would result in a "nullification of the rule stated in *Clemens*"). And, no reported California decision has held that the purchaser of a

1  consumer product may dodge the privity rule by asserting that he or she is a third-party

2  beneficiary of the distribution agreements linking the manufacturer to the retailer which

3  ultimately made the sale.

4       That Ramos is an end user of an HP computer does not make him a third-party beneficiary

5  of any contract between HP and any reseller. California third-party beneficiary law has

6  consistently affirmed that "when a seller knows the buyer intends to resell the goods to a third

7  party, this does not establish that the seller intends to benefit the third party." *E. Aviation Grp.,*

8  *Inc. v. Airborne Express, Inc*., 6 Cal.App.4th 1448, 1453 (1992) (citation omitted). Ramos thus

9  must show more than that HP sold a computer and knew it would get sold to an end user to fall

10  within the third-party beneficiary exception.

11       The California Supreme Court requires courts determining third-party beneficiary status to

12  scrutinize "the express provisions of the contract at issue." *Goonewardene v ADP LLC*, 6 Cal. 5th

13  817, 830 (2019); *see also In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 946 (N.D. Cal.

14  2018) ("Nevertheless, the plaintiff must identify and plead a contract between the defendant and a

15  third party which was expressly made for the benefit of the plaintiff."); *Schauer v. Mandarin*

16  *Gems of California, Inc.*, 125 Cal. App. 4th 949, 957, 23 Cal.Rptr.3d 233 (2005) ("Because third

17  party beneficiary status is a matter of contract interpretation, a person seeking to enforce a

18  contract as a third party beneficiary . . . 'must plead a contract which was made expressly for his

19  [or her] benefit and one in which it clearly appears that he or she was a beneficiary.'"); *California*

20  *Emergency Physicians v. PacifiCare of California*, 111 Cal.App.4th 1127, 1138 (2003) (because

21  "[t]hird party beneficiary status is a matter of contract interpretation," the "plaintiff must plead a

22  contract") (citations omitted).

23       Here, no such evidence exists. The record is devoid of evidence showing HP in any way

24  intended to benefit Ramos. In fact, Ramos cannot establish the existence of any contract between

25  HP and any reseller. This is fatal to Ramos' third-party beneficiary theory. Ramos cannot prove

26  he is the intended beneficiary of any contract between HP and the unidentified "brick-and-mortar

27  chain computer store (he cannot recall exactly which store) in Long Beach, California" where

28  Ramos claims he purchased his computer. Ex. 2 at 42. His implied warranty claim thus cannot

1    survive summary judgment.

2              **5.    Summary judgment to HP on Ramos' implied warranty claim is
             warranted even if Ramos were a third-party beneficiary.**
3

4         Ramos' implied warranty of merchantability claims also fail because HP's Limited

5    Warranty requires that end users request warranty service from HP within the one-year Limited

6    Warranty term, and there is no evidence in the record that Ramos ever did so.

7         To the extent the Court deems Ramos a viable third-party beneficiary, he would be limited

8    to the rights in the contract putatively made for his benefit. *Doe v. Wal-Mart Stores, Inc.*, 572

9    F.3d 677, 682 (9th Cir. 2009) ("A third party beneficiary cannot assert greater rights than those of

10   the promise under the contract."); *Souza v. Westlands Water Dist.*, 135 Cal. App. 4th 879, 895

11   (2006) (same). That contract—HP's reseller agreement with the unidentified "brick and mortar"

12   retailer from where Ramos purchased his laptop in or around April 2021—would have provided

13   that HP's Limited Warranty is the exclusive warranty remedy available. Ramos' ability to recover

14   in warranty as a third-party beneficiary would thus be no greater than HP's standard Limited

15   Warranty.

16        The Limited Warranty provides "the end-user customer, express limited warranty rights

17   from HP, the manufacturer."[5] *See* Ex. 5 at 1. Specifically, "HP guarantees that it will repair,

18   replace, or refund, at HP's option, an HP Hardware Product that manifests a defect in materials or

19   workmanship during the Limited Warranty Period, if **you, the end-user customer, provides HP**

20   **with notice of a defect in your HP Hardware Product during the Limited Warranty Period**."

21   *Id.* (emphasis added).

22        The Limited Warranty Period starts on the "date of purchase" as shown on the end-user's

23   "dated sales or delivery receipt[.]" *Id.* The Limited Warranty further specifies:

24              You are entitled to hardware warranty service according to the terms
              and conditions of this document if a repair to your HP Hardware
25              Product is required due to the manifestation of a defect in materials
              and workmanship within the Limited Warranty Period. HP will, at its
26              option, repair or replace any component or hardware product that
              manifests a defect in materials or workmanship during the Limited
27

28   _____
     [5] HP Worldwide Limited Warranty and Technical Support,
     https://support.hp.com/us-en/document/ish_13063204-13063227-16, (last accessed Feb. 19,2026)

1  Warranty Period if HP receives notice from you, the end-user

2  customer, of the manifestation of such a defect during the Limited
   Warranty Period.

3  *Id*. at 2. The Limited Warranty expressly precludes all warranties, express or implied, other than

4  those specified:

5  HP MAKES NO OTHER EXPRESS WARRANTY OR

6  CONDITION WHETHER WRITTEN OR ORAL AND, TO THE
   EXTENT PERMITTED BY LAW, HP EXPRESSLY DISCLAIMS

7  ALL WARRANTIES AND CONDITIONS NOT STATED IN THIS
   HP LIMITED WARRANTY... FOR ALL TRANSACTIONS

8  OCCURRING IN THE UNITED STATES, ANY IMPLIED
   WARRANTY OR CONDITION OF MERCHANTABILITY,

9  QUALITY, OR FITNESS FOR A PARTICULAR PURPOSE IS
   LIMITED TO THE DURATION OF THE EXPRESS WARRANTY

10 SET FORTH ABOVE.

11 *Id*. at 1.

12 Any claims Ramos might have under this warranty necessarily fail. It is undisputed

13 Ramos purchased his computer "in or around April 2021." Ex. 2 at 12, 42. Ramos thus needed to

14 assert any rights under the warranty no later than April 2022. There is no evidence that he ever

15 did so. Rather, "after approximately six months of use, Plaintiff Ramos eventually stopped using

16 his HP Laptop altogether and replaced it first with an Intel-based laptop and then later with a

17 MacBook." *Id*. at 13-14. There is no evidence Ramos ever directly reached out to HP about

18 anything, let alone stuttering. HP is thus entitled to summary judgment in its favor on Ramos'

19 implied warranty claim even if the Court deems him a third-party beneficiary of HP's agreements

20 with its resellers. *See Rutledge v. Hewlett-Packard Co.*, 238 Cal.App.4th 1164, 1182 (2015)

21 ("Because it is undisputed that Degenshein did not notify HP about a problem with his display

22 screen until after his one-year warranty had expired, his claim for breach of warranty fails, and

23 HP is entitled to judgment as a matter of law as to Degenshein's breach of warranty cause of

24 action."); *Long v. Hewlett-Packard Co.*, 2007 WL 2994812, * 4 (N.D. Cal. July 27, 2007)

25 (rejecting plaintiff's claim for breach of express warranty on grounds that "she first reported her

26 Pavilion [notebook computer]'s defect to HP after the express warranty term.").

27 ///

28 ///

**B.      Ramos' Remaining Claims All Fail for The Same Reasons Set Forth in This Court's October 30, 2025, Order.**

On October 30, 2025, this Court granted summary judgment to HP on Plaintiffs' fraud, consumer protection, and unjust enrichment claim, and on the security-based claims. As to Plaintiffs' fraud-based claims, the Court found that "overall, the record could not support a jury finding that HP had the requisite knowledge for a fraud claim." Dkt. No. 312 at 3-4. The Court further found that Plaintiffs "have not shown enough evidence to make a claim on those grounds actionable." *Id.* at 2. The record on this is unchanged. Ramos proffers no new evidence—and none exists—that HP had the requisite knowledge for fraud or that there is any additional evidence regarding the security-based claims. HP respectfully submits that Plaintiffs' and Ramos' consumer protection, fraud-based, and security-based claims are no longer alive based on the Court's decision. Nonetheless, since the Second Amended Complaint re-pleads the dismissed consumer protection, fraud, and security-based claims, HP incorporates by reference its previous summary judgment briefing on the fraud, consumer protection, and security-based claims. Dkt. Nos. 221, 269, 312.[6] On that basis, HP moves the Court to grant summary judgment in its favor as to Ramos on Counts I, II, V, VI, VII, X, XII, and XIV.

So too with the unjust enrichment claim (Count III). The Court previously granted summary judgment to HP on Plaintiffs' unjust enrichment claim, holding that "there isn't anything on the record that shows that HP's profits can be attributed to misrepresentations HP made to the plaintiffs." Dkt. No. 312 at 4-5. The holding is equally applicable to Ramos' claims. HP thus requests that the Court grant summary judgment as to Ramos' unjust enrichment claim.

**V.      CONCLUSION**

For the foregoing reasons, HP respectfully requests that this Court GRANT its Motion for Summary Judgment as to Plaintiff Rey Rain Ramos.

///

---

[6] HP did not include the full briefing from its previous summary judgment papers in this filing based on its understanding that this briefing should be limited to the implied warranty of merchantability issues discussed at the last Case Management Conference. To the extent the Court requires HP to fully re-submit its briefing, HP will promptly do so.

1

Dated: February 19, 2026

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

*/s/ Beatrice B. Nguyen*
Beatrice B. Nguyen (SBN 172961)
bnguyen@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone: 415.986.2800

Astor H.L. Heaven (*pro hac vice*)
Eli L. Berns-Zieve (*pro hac vice*)
aheaven@crowell.com
eberns-zieve@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Ave. NW
Washington, D.C. 20004
Telephone: 202.624.2599

*Attorneys for Defendant HP Inc*

HP INC.'S MOT. FOR SUMMARY JUDGMENT AS TO
PLAINTIFF REY RAIN RAMOS;
CASE NO. 3:22-CV-04273-VC