UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARAN PIETOSI, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>HP, INC.,<br><br>　　　　　Defendant. | Case No.  22-cv-04273-VC<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF RAMOS; DENYING ADMINISTRATIVE MOTION AS MOOT; GRANTING AMD SEALING REQUESTS**<br><br>Re: Dkt. Nos. 331, 332, 342, 349 |

HP's motion for summary judgment as to Ramos and administrative motion to apply the Ramos ruling to the other plaintiffs' claims is denied. AMD's sealing requests are granted. This order assumes the reader's familiarity with the facts of the case, the parties' arguments, and the applicable law.

**Motion for summary judgment.** The Court previously granted summary judgment for HP on the other named plaintiffs' fraud-based claims, unjust enrichment claim, and on security-related issues. As the parties acknowledge, those issues were extensively litigated and those holdings apply to Ramos as well. Thus, the only claims at issue are Ramos's merchantability claims.

HP argues that, on this record, Ramos cannot show a defect that rendered his computer "unfit for its ordinary purpose." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010). According to HP, there is no evidence the device stuttered while using basic applications like Word, Excel, or PowerPoint, and any stuttering that did happen was because Ramos was using applications that required a higher-end computer. HP also argues that the stutter was too minor to rise to the level of a defect that would render the computer unmerchantable, as shown by the videos created by Ramos's expert, and by the fact that Ramos continued to use the laptop for six months after the stutter began.

The question of whether a defect rises to the level required to sustain a merchantability claim depends on: (1) what the device's ordinary purpose is, as informed by the expectations of reasonable customers; and (2) whether the defect significantly impairs that purpose. See *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1108–10 (N.D. Cal. 2015); *Day v. Advanced Micro Devices, Inc.*, 2023 WL 6998188, at *1 (N.D. Cal. Oct. 23, 2023). The parties disagree as to the ordinary purpose of Ramos's laptop. HP points to its marketing materials to argue that Ramos opted for a budget model containing an entry-level processor, Ryzen 3, that was only suitable for basic computing. Ramos points to those same marketing materials to show that HP was marketing the Ryzen 3 processors as a good choice for gaming. It seems unlikely that a reasonable customer would think the budget model was appropriate for someone who wanted to use their laptop primarily for photo and video editing and gaming. But ultimately, this is a fact-heavy question, and given that the HP marketing materials advertise Ryzen 3 processors as an "excellent choice" to "handle working from home and casual gaming during the week," a reasonable jury could find that the ordinary use of Ramos's laptop was something more than the very basic computing uses—such as web browsing, document editing, and email—that HP suggests its core functionality was limited to. *See* Dunne Decl. Ex. 19 (Dkt. 337-20) at 7.

As to whether the stutter constituted a significant impairment, the key evidence is Ramos's testimony and videos created by Ramos's expert, Steve Novak, that purport to show that "stressing" the fTPM on Ramos's computer results in stuttering.[1] While the videos go towards showing that the stuttering issue can be traced to the fTPM and what the stutter looks like when it happens, they do not show how frequently the stutter would occur in regular use. The frequency of the stutter is key to the question of how significantly the alleged fTPM defect impaired the use of the computer. For example, a stutter or two in a full day of use may be annoying but would not come close to rendering a product unsuitable for its ordinary use. But

---

[1] The methodology used by Novak is explained in the Novak Declaration. *See* Dkt. No. 337-32 at pp. 2–3, 6–8. As summarized at the hearing, Novak's experiments essentially trigger the write or erase functions of the fTPM, which in turn results in computer stuttering. *See* Hearing Transcript at 19:12–20:25.

imagine instead a computer that stutters much more frequently, interrupting Zoom calls or the types of games that HP markets the Ryzen 3 as being suitable for. In that situation, a reasonable jury could plausibly arrive at the conclusion that the computer was not fit for its ordinary purpose. The only evidence as to the frequency of the stutter is Ramos's interrogatory response describing the stuttering as occurring "nearly every time he used his HP laptop" and stating that the issue was "pervasive." *See* Dunne Decl. Ex. 17 (Dkt. No. 337-18) at 13. As discussed at the hearing, this is far from compelling. Nevertheless, absent strong evidence from HP showing that testimony to be untrue, it is enough for the plaintiffs to defeat summary judgment. *See* Hearing Transcript 23:2–24:21.

Apart from its argument that there is no defect, HP argues that HP has no implied warranty obligations for computers it did not sell and that Ramos has not shown sufficient evidence that he purchased the HP computer. Ramos has not produced a receipt or other documentation of the purchase. He is also unable to remember the specific store he purchased the laptop from and only recalls that he purchased it from a brick-and-mortar store in Long Beach. But, as Ramos points out, the laptop's serial number confirms that it is a genuine HP product, and HP has the information necessary to determine which retailer HP sold the laptop to. Given that this information is in HP's domain, and that the plaintiffs have not had the chance to seek it, HP is not entitled to summary judgment based on the absence of evidence that HP sold the laptop.

HP also argues that Ramos cannot establish privity with HP. As an initial matter, this argument does not apply to Ramos's claim under the Song-Beverly Act. *See Biederman v. FCA US LLC*, 765 F. Supp. 3d 920, 949 (N.D. Cal. 2025) ("Unlike the California Commercial Code, the Song-Beverly Act does not require vertical privity between the parties as an element of an implied warranty claim."). But even as to Ramos's claim under the California Commercial Code, the law is not clear whether lack of privity would bar the claim. That is because there is an argument that Ramos would be covered by the third-party beneficiary exception to the privity requirement. *See Day v. Advanced Micro Devices, Inc.*, 2023 WL 6998188, at *1 (N.D. Cal. Oct.

23, 2023); *see also In re Natera Prenatal Testing Litigation*, 664 F. Supp. 3d 995, 1011 (N.D. Cal. 2023); *Dang v. Samsung Electronics Co.*, 2018 WL 11348883, at \*5 (N.D. Cal. July 2, 2018). *But see Quackenbush v. American Honda Motor Co.*, Inc., 650 F. Supp. 3d 837, 843 (N.D. Cal. 2023); *Biederman*, 765 F. Supp. 3d at 948. At the summary judgment stage, one could imagine that the answer to whether an end consumer is covered by the third-party beneficiary exception depends on the evidence that is put on the record, including the specifics of the contract between the manufacturer and the retailer. *See Eastern Aviation Group, Inc. v. Airborne Express, Inc.*, 6 Cal. App. 4th 1448, 1453 (1992). But again, those key details are in HP's domain. Absent any indication that the contract between HP and the retailer was specifically drawn to benefit the retailer, rather than the end consumer, the reasonable inference is that the end consumer is an intended third-party beneficiary of the manufacturer-retailer contract.

Finally, HP asserts that even if Ramos is an intended third-party beneficiary, summary judgment is warranted because the limited warranty is the "exclusive warranty remedy available" to Ramos and there is no evidence that he requested warranty service during the limited warranty's one-year term. In support of that proposition, HP cites cases that say that a third-party beneficiary cannot assert greater rights than the promisee of the contract putatively made for the third-party's benefit. *See Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 682 (9th Cir. 2009). But unless the limited warranty foreclosed the implied warranty of merchantability, promisees under the contract could assert a claim for breach of that implied warranty. Thus, the limited warranty would only bar Ramos's claim to the extent that it effectively disclaimed the implied warranty of merchantability for direct promisees. Under the Song-Beverly Act, such disclaimers are only possible for "as is" sales. Cal. Civ. Code § 1792.3 ("No implied warranty of merchantability . . . shall be waived, except in the case of a sale of consumer goods on an "as is" or "with all faults" basis."). HP does not contend that Ramos's laptop was sold on an "as is" basis. As for the California Commercial Code, to be effective, a disclaimer of the implied warranty of merchantability must be conspicuous and specifically mention merchantability. Cal. Com. Code § 2316(2) ("[T]o exclude or modify the implied warranty of merchantability or any part of it the

language must mention merchantability and in case of a writing must be conspicuous."). HP only points to a warranty page accessed on its website in February 2026. This is not sufficient to show that HP effectively disclaimed the implied warranty of merchantability as to Ramos's computer.

**Administrative motion.** In light of the denial of summary judgment as to Ramos's merchantability claims, HP's motion to apply this ruling to the identical claims asserted by the other named plaintiffs is denied as moot.

**Sealing requests.** AMD's sealing requests at Dkt. Nos. 342 and 349 are granted. Within 7 days, Ramos must refile his opposition to HP's motion for summary judgment (Dkt. No. 337) with the narrowed redactions described in AMD's sealing requests.

**IT IS SO ORDERED.**

Dated: May 27, 2026

VINCE CHHABRIA
United States District Judge